IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 16, 2016 Session

## CONCORD ENTERPRISES OF KNOXVILLE, INC. v. COMMISSIONER OF TENNESSEE DEPARTMENT OF LABOR & WORKFORCE DEVELOPMENT

**Appeal from the Chancery Court for Davidson County**
**No. 14-664-III     Ellen H. Lyle, Chancellor**

---

### No. M2016-00118-COA-R3-CV

---

This appeal arises from a determination by the Tennessee Department of Labor and Workforce Development ("the Department") that Concord Enterprises of Knoxville, Inc. ("Concord"), a pet grooming business, misclassified certain employees as independent contractors from 2006 through 2011 and, therefore, was liable for unpaid unemployment taxes from that period. Following a hearing, the Appeals Tribunal concluded that unemployment taxes were due, a decision affirmed by the Commissioner's Designee. Concord petitioned for judicial review. The Chancery Court for Davidson County ("the Trial Court") affirmed the decision of the Commissioner's Designee and dismissed Concord's petition. Concord appeals to this Court. We find, *inter alia*, that the pet groomers at issue both performed their service at Concord's place of business and performed pet grooming service that fell squarely within Concord's course of usual business. Evidence both substantial and material supports the agency's determination. We affirm the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

Harold C. Wimberly, Knoxville, Tennessee, for the appellant, Concord Enterprises of Knoxville, Inc.

Herbert H. Slatery, III, Attorney General and Reporter, and, W. Derek Green, Assistant Attorney General, for the appellee, the Tennessee Department of Labor and Workforce Development.

## OPINION

## Background

In 2011, the Department conducted an audit of Concord. In September of 2011, the Department determined that Concord misclassified certain employees as independent contractors from 2006 through 2011 and was liable for unpaid unemployment taxes from that period for these employees. Concord requested a redetermination. In March 2012, the Department affirmed the earlier findings. Various appeals ensued which pertained to whether Concord's appeal was timely.

Eventually, the matter was heard on the merits by the Appeals Tribunal in May 2013. Susan Porterfield ("Porterfield"), owner of Concord, testified. Porterfield testified in the affirmative that Concord was "in the business of grooming dogs." Concord also trained students to become pet groomers and sold certain pet products like shampoo. The pet groomers at issue determined their prices case-by-case, and Concord paid them 50% commission of what they brought in once a week. Concord provided the pet groomers with necessary supplies. The pet groomers sometimes participated in selling Concord retail items. The pet groomers could work where they wished, but their services provided through Concord all were performed at Concord's place of business on Kingston Pike in Knox County. Customers would call Concord to set up appointments rather than call individual pet groomers, although they could request a particular groomer. The Appeals Tribunal concluded that the pet groomers were covered employees rather than independent contractors, a decision affirmed by the Commissioner's Designee.

Concord filed a petition for judicial review, which later was decided by the Trial Court in a December 2015 final judgment. The Trial Court found as follows:

> This case is a petition for judicial review. It was filed by a business challenging the Respondent's administrative decision that the Petitioner owes back unemployment insurance premiums for the years 2006-2011. Respondent's finding that Petitioner owes the premiums derives from the classification of persons who provided pet grooming services at the Petitioner's business location.
> The Respondent concluded in the administrative proceeding that the groomers who worked at the Petitioner's business constituted covered employees pursuant to Tennessee Code Annotated section 50-7-207. The Petitioner contends the groomers are independent contractors for which no premiums are due.

Judicial review was initially filed in Knox County, Tennessee. On January 27, 2014, the case was transferred to Davidson County Chancery Court and assigned to this Court.

Although the Petitioner asserts it fits the definition of independent contractor under the seven-factor test of Tennessee common law, the Petitioner cited in its brief and acknowledged in oral argument that it must also satisfy a statutory test. Known as the "ABC" test, Tennessee Code Annotated section 50-7-207(e)(1)(A)(B)(C) requires all of the three following factors to be present to establish that the worker is an independent contractor. Failure to establish any one of the three factors classifies the worker as a covered employee for which the business must pay unemployment insurance premiums. *Beare v. State*, 814 S.W.2d 715, 719 (Tenn. 1991). The ABC test of Tennessee Code Annotated section 50-7-207(e)(1)(A)(B)(C) provides as follows:

(e) SPECIAL RULES. The following rules shall govern for purposes of this section:

(1) Service performed by an individual shall be deemed to be included service for purposes of this section regardless of whether the common law relationship of master and servant exists, unless and until it is shown to the satisfaction of the administrator that:

(A) The individual has been and will continue to be free from control and direction in connection with the performance of the service, both under any contract for the performance of service and in fact;

(B) The service is performed either outside the usual course of the business for which the service is performed or is performed outside of all the places of business of the enterprise for which the service is performed; and

(C) The individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed;

Upon reviewing the administrative record and applying the law, the Court finds that, as asserted by the Respondent, the evidence establishes that the Petitioner fails to meet subsection (B) of the three requirements of Tennessee Code Annotated section 50-7-201(e)(1). As quoted above, subsection (B) pertains to performance of the service. For independent contractor classification of the worker, the business must demonstrate under subsection (B) that the service the worker is performing is either "outside the usual course of the business for which the service is performed" or "is

-3-

performed outside of all the places of business of the enterprise for which the service is performed."

In this case the record is clear, at pages 23-25 of the transcript of the Petitioner representative's testimony, that the services in issue were performed at the Petitioner's place of business. Accordingly, the Petitioner has failed to establish the latter element of subsection (B).

Additionally, the record establishes that the first element of subsection (B)—the service in issue is performed "outside the usual course of the business for which the service is performed"—also is not present in this case. At pages 11 and 21 of the transcript, the Petitioner's representative admits that the type of business conducted is pet grooming. Thus, because the Petitioner's business was pet grooming and the service in issue is pet grooming, the services in issue are not outside the usual course of the business for which the service was performed.

While it is established in the transcript at pages 29, 41, 48, that the Petitioner operates a grooming school and also is a pet supply retailer, these other lines of business do not substantially detract from the testimony of the Petitioner's representative, at pages 11 and 21 of the transcript, that the Petitioner's third line of business at the location is pet grooming. Thus, the record establishes that the Petitioner is in the business of pet grooming. Further that the transcript at page 12 establishes that the Petitioner earns money through the pet grooming business of 50% of the service fee the groomers charge is additional evidence that the Petitioner is in the pet grooming business. Moreover, the testimony of the Respondent's auditor, at pages 58-59 of the transcript, that the workers reported that they are providing pet grooming services under the Petitioner's corporate name and not under their own business name, label or brand, is further substantial and material evidence that the workers are providing services not outside the usual course of the business for which the service was performed. Lastly, there is no evidence that the Petitioner's earnings are solely from the grooming school or pet supply sales.

Having failed to establish the elements of subsection (B) of the ABC test, the Petitioner is liable to remit unemployment insurance premiums as was determined in the administrative proceedings conducted by the Respondent.

It is therefore ORDERED that the decision below is affirmed . . . .

Concord timely appealed to this Court.

**Discussion**

Although not stated exactly as such, Concord raises the following issue on appeal: whether the Trial Court erred in affirming the decision by the Commissioner's Designee classifying the individuals who provided pet grooming service at Concord between the years 2006 and 2011 as covered employees rather than independent contractors, under Tenn. Code Ann. § 50-7-207(e).

In *HRP of Tennessee, Inc. v. State, Dept. of Employment Sec.*, No. E2005-01176-COA-R3-CV, 2006 WL 1763673 (Tenn. Ct. App. June 28, 2006), *no appl. perm. appeal filed*, this Court discussed the standard of review in cases involving employee classification for unemployment insurance tax purposes as follows:

> The sole issue presented for our review is whether the trial court erred in concluding that HRP was not subject to unemployment insurance tax assessment for services performed by the nurses on its registry because the nurses were independent contractors rather than employees of HRP.
>
> ***
>
> The appellate review of an administrative law judge's decision is governed by the Uniform Administrative Procedures Act, codified at T.C.A. § 4-5-101, *et seq. Freedom Broad. of Tenn., Inc. v. Tennessee Dep't. of Revenue*, 83 S.W.3d 777, 780 (Tenn. Ct. App. 2002) (citing *Sanifill of Tenn., Inc. v. Tennessee Solid Waste Disposal Control Bd.*, 907 S.W.2d 807, 809 (Tenn. 1995)). As set forth at T.C.A. § 4-5-322(h), the Act provides in pertinent part the following:
>
> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

-5-

>(5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.
>
>An agency's findings of fact may not be reviewed *de novo* by the appellate courts, and the latter should not substitute its judgment for that of the agency; however, the "construction of a statute and application of the law to the facts is a question of law that may be addressed by the courts." *Sanifill*, 907 S.W.2d at 810. The facts in the matter now before us are apparently not in dispute. The question of whether HRP is subject to unemployment insurance taxation under relevant statutory authority is determined by an application of the law to the facts and is, accordingly, a question of law.

*HRP*, 2006 WL 1763673, at *2.

It is undisputed in the present appeal that, under these facts, the pet groomers must have performed "included service" in order to be considered employees. Tenn. Code Ann. § 50-7-207(e)(2014), which contains the statutory exceptions for included service, provides as follows in relevant part:

>(1) Service performed by an individual shall be deemed to be included service for purposes of this section regardless of whether the common law relationship of master and servant exists, unless and until it is shown to the satisfaction of the administrator that:
>
>(A) The individual has been and will continue to be free from control and direction in connection with the performance of the service, both under any contract for the performance of service and in fact;
>
>(B) The service is performed either outside the usual course of the business for which the service is performed or is performed outside of all the places of business of the enterprise for which the service is performed; and
>
>(C) The individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed;

Both parties on appeal agree, as did the Trial Court, that Clause (B) of the so-called "ABC" test is at the center of the dispute. In *Beare Co. v. State*, 814 S.W.2d 715, 719 (Tenn. 1991), our Supreme Court discussed Clause (B) as follows:

Under clause (B) of T.C.A. § 50-7-207(e)(1) the taxpayer must establish that the services performed by the workers in question were "performed *either* outside of the taxpayer's usual course of business *or* performed outside of all of the taxpayer's places of business...." T.C.A. § 50-7-207(e)(1)(B) (emphasis added.). Thus, the taxpayer has two alternative ways to satisfy the "B" prong of the test.[1] There is adequate evidence contained in the record to support the conclusion that the services performed by the hoppers are outside the usual course of Beare's business. Simply put, the reason is that the loading and unloading by the hoppers is primarily the responsibility of the shipper or carrier, not that of the Beare Company. In a letter made an exhibit to his deposition, the President of the International Association of Refrigerated Warehouses stated:

> I understand from our members that traditionally [hoppers] are not considered employees of refrigerated warehouses. Truck shipments to and from refrigerated warehouses usually involve the loading and unloading of the trucks by the truck drivers and the truck drivers' assistants who are employees who are independent contractors of the trucking companies. The refrigerated warehouses generally do not offer the service of loading or unloading of trucks because that service is usually included in the trucking rate, thus a part of the trucking service. Since many truck drivers have no helpers on their trucks, I understand that they usually hire helpers to load and unload the trucks when they arrive at a warehouse facility. I also understand that refrigerated warehouses usually do not get involved with the arrangement between the truck drivers and the [hoppers] who hang around the warehouse facility to solicit such employment from the truck drivers.

(footnote in original).

---

[1] The Commissioner found that one of the conditions contained in clause (B) was satisfied, but not both. Apparently, the Commissioner read the disjunctive word "or" to mean "and." Specifically, it was determined below that Beare met the first alternative test, that the work performed by the hoppers was not in the usual course of Beare's business. The Commissioner found that the loading and unloading of the trucks was a function usually performed by the carrier, not the warehouse. Having reached that conclusion, it was unnecessary for the Commissioner to address whether the services were performed outside all the places where Beare does business.

Concord argues that the groomers were independent contractors. According to Concord, its business primarily is a school rather than a shop. Concord cites the lack of salary or W-2s issued to its groomers as evidence in support of its contention. The Department, on the other hand, cites Concord's owner's testimony that Concord is a pet grooming business. The Department also points out how customers call Concord rather than individual groomers to set up appointments.

In order to prevail, Concord has to establish that the exception from Tenn. Code Ann. § 50-7-207 applied to its pet groomers. Specifically, under Clause (B), Concord had to prove that (1) the pet groomers performed their service outside of Concord's place of business, or that (2) the pet groomers' services were outside the usual course of Concord's business. Substantial and material evidence in the record on appeal reveals the opposite. The testimony of Concord's owner herself is that Concord is, at least in large part, a pet grooming business. The pet groomers performed their services for Concord at Concord's place of business. By failing to establish all three prongs of the ABC Test, Concord therefore failed to establish that its pet groomers were independent contractors rather than covered employees. Therefore, Concord is liable for unpaid unemployment insurance taxes from the relevant time period. We conclude, as did the Trial Court, that the agency's decision was supported by evidence both substantial and material. Finding no error by the Trial Court, we affirm the judgment of the Trial Court.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Concord Enterprises of Knoxville, Inc., and its surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE